DOC# 59

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

PLANTIFF

VS.

ANDREW RAMSAY,

PETITIONER.

CR#: 1:96-CR-01098-801

## MOTION SEEKING COMPASSIONATE RELEASE/ REDUCTION OF SENTENCE/ MODIFICATION OF IMPOSED TERM UNDER 18 U.S.C. § 3582 (c)(1)(A)(i), AND THE APPOINTMENT OF COUNSEL.

1. INTRODUCTION:

DEFENDANT ANDREW RAMSAY ("HEREINAFTER") ("RAMSAY"), PROCEEDING PRO-SE, RESPECTFULLY MOVES THIS COURT FOR A REVIEW AND ORDER REDUCING HIS SENTENCE BASED ON CONGRESS' INITIATIVE TO INCREASE THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE" UNDER THE "FIRST STEP ACT". PUB. L. NO. 115- 391, SECTION 603(b), 132. STAT. 5194, 5239 (2018). AS DETAILED BELOW, RAMSAY WILL EXHIBIT "EXTRAORDINARY.

(1)

AND COMPELLING REASONS " IN CONJUNCTION WITH EXEMPLARY POST-SENTENCING REHABILITATION, ALONG WITH, SCIENTIFIC ANALYSIS OF CASES SUPPORTING THE NEED FOR JUDICIAL REVIEW. SUCH A REDUCTION, AFTER REVIEW, WOULD BE CONSISTENT WITH UNITED STATES SENTENCING GUIDELINES ("U.S.S.G.") § 1B1.13 AND 18 U.S.C. § 3553 (a) FACTORS. IN SUPPORT OF THIS MOTION, RAMSAY, STATES THE FOLLOWING FACTS THAT RAMSAY PROPOSES WILL MEET THE STANDARD OF REVIEW AND " EXTRAORDINARY AND COMPELLING REASONS " THAT WILL ASSIST TOWARDS WARRANTING RELIEF.

2. FACTUAL AND PROCEDURAL BACKGROUND:

ON JANUARY, 4, 1993, RAMSEY WAS ARRESTED BY NEW YORK CITY HOMICIDE FOR THE CHARGE OF " MURDER IN THE FIRST DEGREE " FOR THE KILLING OF PAUL SPIED, NICOLE BROWN, AND " BABY " BROWN ON SEPTEMBER, 7, 1992 AT A BLOCK PARTY IN THE BRONX, NEW YORK. RAMSAY PROCEEDED TO TRAIL ON THE CHARGE(S) OF THREE (3) COUNTS OF FIRST DEGREE MURDER. RAMSAY WAS ACQUITTED OF ALL COUNTS.

SUBSEQUENTLY, RAMSAY WAS DETAINED BY

IMMIGRATION OFFICERS, EVEN UNDER THE LEGAL STATUS OF A CITIZEN, AND TAKEN INTO FEDERAL CUSTODY. ON NOVEMBER 21, 1996, RAMSAY WAS NAMED IN A ONE COUNT INDICTMENT CHARGING HIM WITH "MURDER IN THE AID OF RACKETEERING", IN VIOLATION OF 18 U.S.C. § 1959 (a)(1).

THE GOVERNMENT DISMISSES THE ORIGINAL INDICTMENT AND A SECOND INDICTMENT IS FILED ON JULY, 23, 1997. THE APPELLANT ENTERED A PLEA OF "NOT GUILTY" BEFORE THE HONORABLE JED. S. RAKOFF, ON JULY 28, 1997. ON AUGUST, 4, 1997, THE APPELLANT WAS FOUND GUILTY OF MURDER IN THE AID OF RACKETEERING AND GIVEN A MANDATORY SENTENCE OF LIFE.

3. STANDARD OF REVIEW:

IN 2018, CONGRESS PASSED THE "FIRST STEP ACT" ("FSA") PUB. L. NO. 115-391, 132 STAT. 5194. THE STATUTE AMENDS NUMEROUS PORTIONS OF THE UNITED STATES CODES TO PROMOTE REHABILITATION OF PRISONERS AND UNWIND DECADES OF MASS INCARCERATION. CONG. RESEARCH. SERV. R45558, THE FIRST STEP ACT OF 2018: AN OVERVIEW 1 (2019).

HERE, RAMSAY SEEKS MERCY FROM THIS COURT AND CONSIDERATION(S) OF THE SCIENTIFIC STUDIES THAT ALSO SUPPORT "EXTRAORDINARY AND COMPELLING" CIRCUMSTANCES IN THE INSTANT MOTION, UNDER THE AMENDED 18 U.S.C. § 3582 OF THE (F.S.A.), SECTION 603 OF THE ACT AMENDED § 3582 (c)(1)(A); TO PERMIT DEFENDANTS TO MOVE THE SENTENCING COURT FOR MODIFICATION OF SENTENCE STATING THAT "AFTER THE DEFENDANT HAS FULLY EXHAUSTED ALL ADMINISTRATIVE RIGHTS TO APPEAL, A FAILURE OF THE BUREAU OF PRISONS TO BRING A MOTION ON THE DEFENDANT'S BEHALF, OR THE LAPSE OF 30 DAYS FROM THE RECEIPT OF SUCH A REQUEST TO THE WARDEN OF THE DEFENDANT'S FACILITY, WHICHEVER IS EARLIER, MAY REDUCE THE TERM OF IMPRISONMENT, AFTER CONSIDERING THE FACTORS SET FORTH IN 18 U.S.C. § 3553 (a) TO THE EXTENT THAT THEY ARE APPLICABLE."

## SECTION 3582 (c)(1)(A)

RAMSAY HAS EXHAUSTED THE REQUIRED ADMINISTRATIVE REMEDY PRIOR TO MOVING THIS COURT FOR RELIEF UNDER 18 U.S.C. § 3582 (c)(1)(A)(i). RAMSAY SUBMITTED A REQUEST VIA "ELECTRONIC E-MAIL" TO THE OFFICE OF THE WARDEN (WARDEN S. FINLEY)

(4)

OVER THIRTY (30) DAYS PRIOR TO THIS DATE 5/25/2020, AND HAS NOT RECEIVED A RESPONSE. " AN INMATE MAY INITIATE A REQUEST [TO THE WARDEN] FOR CONSIDERATION UNDER 18 U.S.C. SECTION 3582 (c)(1)(A) ONLY WHEN THERE ARE PARTICULARLY EXTRAORDINARY OR COMPELLING CIRCUMSTANCES WHICH COULD NOT REASONABLY HAVE BEEN FORSEEN BY THE COURT AT THE TIME OF SENTENCING." P.S. 5050.50, 28 C.F.R. § 571.61.

THE REQUEST THAT RAMSAY NOW SUBMITS TO THE COURT WILL DETAIL THE EXTRA-ORDINARY AND COMPELLING CIRCUMSTANCES FOR COMPASSIONATE RELEASE / REDUCTION OF SENTENCE THAT COULD NOT HAVE REASONABLY BEEN FORSEEN BY THE COURT AT HIS JANUARY, 23, 1998, SENTENCING. SPECIFICALLY, BECAUSE OF THE CHANGES IN LAW THAT HAS OCCURED LONG AFTER RAMSAY WAS SENTENCED BY THE COURT, RAMSAY'S SENTENCE OF "LIFE" IN PRISON IMPOSED FOR HIS CONVICTION, MIGHT NOT BE THE SAME, WITH THE CHANGES IN LAWS AND SENTENCING SCHEMES.

4. CONSIDERATIONS FOR COMPASSIONATE RELEASE / RE-DUCTION OF SENTENCE IS AVAILABLE TO RAMSAY.

COMPASSIONATE RELEASE / R.I.S. CODIFIED AT

18 U.S.C. § 3582 (c), provides a narrow path for defendants, like Ramsay, in " extraordinary and compelling reasons" to leave prison early. Section 3582 (c)(1)(A)(i). Any reduction in sentence, however, must comply with 18 U.S.C. § 3553 (a) factors and applicable policy statements issued by the sentencing commission. Prior to the FSA, the sentencing commission's policy statement required both " extraordinary and compelling" reasons, and that, " the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. section 3142 (e)." U.S.S.G. § 1B1.13. Congress has never defined what constitutes " extraordinary and compelling reasons." Before the passage of the FSA, the sentencing commission's policy statement listed three specific examples of extraordinary and compelling reasons to consider in reducing a defendant's sentence under § 3582 (c)(1)(A); (1) medical condition, (2) advance age, and (3) family circumstances. Id N.1 (A)-(c). BOP memo.

However, the sentencing commission provided a (catch-all) provision that allows the BOP's director to determine that " there exist in the defendant's case an extraordinary and compelling reason other than, or in combination

(6)

WITH, THE REASONS DESCRIBED IN SUBDIVISIONS (A)-(C)." U.S.S.G. § 1B1.13 CMT. N.1(D). THE SENTENCING COMMISSION, HOWEVER, NEVER HARMONIZED IT'S POLICY STATEMENT WITH THE FSA. RATHER, THE OUTDATED POLICY STATEMENT STILL ASSUMES THAT COMPASSIONATE RELEASE / R.I.S. " MAY BE GRANTED ONLY UPON MOTION BY THE DIRECTOR OF THE BUREAU OF PRISONS." U.S.S.G. § 1B1.13 CMT. N.4. THIS, HOWEVER, IS NO LONGER THE LAW IN THE WAKE OF THE FIRST STEP ACT.

§ B. CASE(S) LAW IN SUPPORT OF COURT'S JURISDICTION.

UNITED STATES V. LYNN, 2019 U.S. DIST. LEXIS 135987 (S.D. ALA. AUG. 13, 2019), APPEAL DOCKETED, NO. 19-3239 (11TH CIR. AUG. 21, 2019), UNITED STATES V. CANTU-RIVERA, 2019 WL 2498923 AT*5 (S.D. TEX. JUNE 17, 2019); SEE ALSO, UNITED STATES V BECK, 2019 WL 2716505 AT*6 (M.D.N.C. JUNE 28, 2019), UNITED STATES V FOX, 2019 WL 3046086 AT*3 (D.ME. JULY, 11, 2019);

"DISTRICT COURTS HAVE GRANTED RELIEF UNDER THE NEWLY AMENDED SECTION 3582(c)(1)(A)(i)."

SEE; E.R., UNITED STATES V. URKEVICH, 2019 WL 6037391 (D. NEB. NOV. 14, 2019). ALSO, CANTU-RIVERA, 2019 WL

2498923 (S.D. TEX. JUNE 24, 2019). IN REDUCING CANTU-RIVERA'S SENTENCE, THE COURT MODIFIED THE MANDATORY LIFE SENTENCING TO TIME SERVED UNDER § 3582 (c)(4)(A)(i). SEE ALSO: UNITED STATES V. WALKER, 2019 U.S. DIST. LEXIS 180084 (N.D. OHIO OCT. 17. 2019), UNITED STATES V. MAUMAU, U.S. DIST. LEXIS 28392 (CD. UTAH, FEB. 18. 2020). ALSO, SEE! UNITED STATES V. HANDERHAN, 2019 U.S. APP. LEXIS 29988 (3d CIR. SEPT. 11. 2019).

6. SCIENTIFIC EVIDENCE IN RELATION TO RAMSAY.

IN THE WAKE OF CRIMINAL JUSTICE REFORM IN COMPLIANCE WITH THE RULES SET FORTH IN "THE FIRST STEP ACT" AND "THE FAIR SENTENCING ACT" SIGNED INTO LAW BY PRESIDENT DONALD TRUMP ON DEC 29, 2018, RAMSAY IS RESPECTFULLY PETITIONING THE COURT FOR "COMPASSIONATE RELEASE/ REDUCTION OF SENTENCE, A SUBSIDIARY PROVISION APPLICABLE TO FEDERAL PRISONERS WHO ARE ELIGIBLE FOR THE FAIR SENTENCING AND FIRST STEP ACT(s). (SEE: FACTUAL AND PROCEDURAL BACKGROUND PERTAINING TO CASE HISTORY.)

TO DATE, MAY 25, 2020, RAMSAY HAS BEEN INCARCERATED FOR 26 YEARS OF HIS LIFE. AS MENTIONED, PRESIDENT DONALD TRUMP HAS SIGNED INTO

(8)

LAW, BILLS WHICH OPEN UP NEW AVENUES FOR INMATES
IN SITUATIONS LIKE THE ONE RAMSAY IS IN, TO SEEK
RELIEF FROM A LIFE SENTENCE. MY ARGUMENTS/PLEAS ARE
BASED ON ACTUAL FACTS FROM THE RECORDS OF THE CASE.
I WILL RELATE THEM IN NUMERICAL ORDER TO
ESTABLISH MY CONTENTIONS.

1)   THE CRIME WAS COMMITTED WHEN I WAS EIGHTEEN (18)
YEARS OLD. IT IS TO THE UNDERSTANDING BASED ON
ACTUAL SCIENTIFIC STUDIES, UNDER TODAY'S LAWS, THE
RENDERING OF THE SENTENCE, IF IMPOSED UNDER THE
NOW EXISTING LAWS AND SENTENCING SCHEME, THAT RAMSAY
WOULD NOT HAVE BEEN SENTENCED TO LIFE IMPRISONMENT AT
THE YOUNG AGE OF 18.
        IN (CRUZ V UNITED STATES, 2018 U.S. DIST.
LEXIS 52924, 2018 WL), THE COURT REASONED: "THAT
MILLER V ALABAMA, 567 U.S. 460, 132 S.CT. 2455, 183 L.ED
2d. 407. (2012), APPLIES TO 18-YEAR-OLDS AND THUS THAT
THE EIGHTH AMENDMENT FORBIDS A SENTENCING SCHEME THAT
MANDATES "LIFE IN PRISON" WITHOUT POSSIBILITY OF PAROLE
FOR OFFENDERS WHO WERE 18 YEARS OLD AT THE TIME
OF THEIR CRIMES. (SEE: ALSO; QUOTE FROM DR. LAURENCE
STEINBERG, ET AL.) (NATIONAL CENTER FOR JUVENILE JUSTICE,
U.S. AGE BOUNDARIES OF DELINQUENCY 2016 (DOC.NO. 115·8) AT 2:

YOUNG ADULTHOOD AS A TRADITIONAL LEGAL CATEGORY.
85 FORDHAM L. REV. 641, 646, N.156 (2016). DR. STEINBERG
STATED: "PEOPLE BEGAN TO RESEARCH IN THAT PERIOD
OF TIME TOWARD THE END OF THE DECADE AND AS WE
MOVED INTO 2010 AND BEYOND, THERE BEGAN TO
ACCUMULATE SOME RESEARCH ON DEVELOPMENT IN THE
BRAIN BEYOND AGE 18, SO WE DIDN'T KNOW A GREAT DEAL
ABOUT BRAIN DEVELOPMENT DURING LATE ADOLESCENCE
UNTIL MORE RECENTLY. THEREFORE, WHEN THE ROPER COURT
DREW THE LINE AT AGE 18 IN 2005, THE COURT DID
NOT HAVE BEFORE IT THE RECORD OF SCIENTIFIC
EVIDENCE ABOUT LATE ADOLESENCE THAT IS NOW
BEFORE THE COURT."

RELYING ON BOTH THE SCIENTIFIC EVIDENCE
AND THE SOCIAL EVIDENCE OF NATIONAL CONSENSUS,
THE COURT CONCLUDES THAT THE HALLMARK CHARACTER-
ISTICS OF JUVENILES THAT MAKE THEM LESS
CULPABLE ALSO APPLIES TO 18 YEAR OLDS. AS SUCH,
THE PENOLOGICAL RATIONALES FOR IMPOSING LIFE
IMPRISONMENT WITHOUT THE POSSIBILITY OF PAROLE
CANNOT BE USED AS JUSTIFICATION WHEN APPLIED
TO AN 18 YEAR OLD YOUTH.

TAKING THE OVERWHELMING FACTS
STATED BY THE TOP PROFESSIONALS IN THE FIELD
OF BRAIN DEVELOPMENT, THE LIFE SENTENCE

IMPOSED ON MR. RAMSAY MORE THAN (22) YEARS AGO, WITHOUT THE POSSIBILITY OF PAROLE, WOULD BE UNDER GREAT LEGAL SCRUTINY TODAY IN THE YEAR OF 2020. ALTHOUGH, EVEN WITH ALL OF THE DOCTOR'S PRESENTED SCIENCE, IT IS STILL NOT TO SAY, THAT A LIFE SENTENCE COULD HAVE STILL BEEN RENDERED BY THE COURT, HOWEVER, ALOT OF MITIGATING FACTORS WOULD HAVE TO GO BEFORE THE TRAIL JURY FOR A PRISON TERM OF LIFE TO BE REQUIRED, FACTORS THAT WERE NEVER PRESENTED FOR THE RECORD DURING TRAIL, DUE TO A DIFFERENCE IN PROCEEDINGS FROM THEN UP UNTIL NOW.

UNDER THE SENTENCING SCHEME, BEFORE CONGRESS VOTED IN AND IMPLEMENTED NEW LAWS THAT LOOSENED THE BINDING LIMITS UPON JUDGES AND THE COURTS, JUDGES COULD NOT DEPART FROM MANDATORY BINDS, EVEN WHEN THEY WANTED TO USE THEIR JUDICIARY DISCRETION TO IMPOSE A BEFITTING SENTENCE, LIKE IN THE CASE OF RAMSAY.

2.   THE COURT'S OWN RECORD WILL REFLECT THE RELUCTANT ATTITUDE OF THE TRAIL JUDGE WHEN BINDED BY THE MANDATORY STATUTES, HAVING TO IMPOSE A LIFE SENTENCE UPON MR. RAMSAY. (SEE: EXHIBIT 1, PAGE 3) QUOTING THE COURT, "DESPITE THE VERY

(11)

SERIOUS NATURE OF THE OFFENSE HERE INVOLVED

THAT RESULTED IN THE WANTON MURDER OF THREE

PERSONS, AND DESPITE THE OBVIOUS NEED IN SUCH

CIRCUMSTANCES FOR A VERY SEVERE SENTENCE, BOTH TO

PUNISH THE DEFENDANT FOR THIS TERRIBLE DEED

AND TO DETER OTHERS, THE COURT, LIKE MANY OTHER

COURTS, IS NOT ENTIRELY COMFORTABLE WITH THE FACT

THAT THE SENTENCING GUIDELINES LEAVE NO

MEAINGFUL DISCRETION IN THIS SITUATION. ", END

QUOTE.

    (PLEASE SEE: EXHIBIT 2, PAGES). QUOTED FROM

COURT RECORD, " THE NEED FOR A VERY SEVERE

SENTENCE IS OBVIOUS. WHAT IS NOT SO OBVIOUS IS THAT

A DETERMINATION BY THE SENTENCING COMMISSION

THAT A 24-YEAR-OLD PERSON WHO, ON THE RECORD

BEFORE THE COURT IS NOT WITHOUT PROMISE OF

SALVAGEABILITY AS A RESPONSIBLE PERSON IS IN

EFFECT DETERMINED TO BE SOMEONE SOCIETY WILL

FOREVER REMOVE FROM ITS EVERYDAY AFFAIRS. " END QUOTE.

THE RECORD HERE IS CLEAR CONCERNING TWO EXTREMELY

IMPORTANT MITIGATING FACTORS ON RAMSAY'S REQUEST

FOR RECONSIDERATION OF SENTENCE AND THEY ARE, 1)

THE AGE RAMSAY WAS WHEN THE CRIME WAS COMMITTED

(18); TO WHICH, ACCORDING TO MODERN DAY SCIENTIFIC

STUDIES, RAMSAY WOULD BE CONSIDERED AS A JUVENILE

(12)

WHO COMMITTED A CRIME. 2) THE SENTENCE IMPOSED
TODAY WOULD NOT BE A LIFE SENTENCE SPECIFICALLY
IN THE EVENT THAT THE SENTENCING JUDGE WOULD
STILL BE THE HONORABLE JUDGE JED. S. RAKOFF.

FOR THE FOREGOING FACTS AND REASONS
THAT WERE NOT AVAILABLE TOWARDS MITIGATING
FACTORS IN SUPPORT FOR RAMSAY DECADES AGO,
RAMSAY RESPECTFULLY MAKES HIS PLEA TO THE
COURT TO CONSIDER FACTORS THAT WERE NOT
AVAILABLE BACK THEN AND GRANT COMPASSIONATE
RELIEF IN A FORM THAT WOULD ALLOW MR. RAMSAY
TO ONE DAY RE-ENTER BACK INTO SOCIETY.

7. <u>MODIFICATION OF RAMSAY'S SENTENCE IS</u>
   <u>CONSISTENT WITH 18 U.S.C. § 3553(a) FACTORS.</u>

ANY REDUCTION OF RAMSAY'S SENTENCE
ON COUNT ONE (1) FROM THE IMPOSED LIFE
SENTENCE MANDATED BY THE SENTENCING GUIDELINES
TO EITHER TIME SERVED OR A TERM TO WHERE
RELEASE FROM INCARCERATION CAN BE ACHIEVED IS
CONSISTENT WITH ALL OF THE FACTORS SET FORTH
IN 18 U.S.C. § 3553(a), ESPECIALLY § 3553(a)(2)(A)
("THE NEED FOR SENTENCE IMPOSED... TO REFLECT THE

SERIOUSNESS OF THE OFFENSE TO PROMOTE RESPECT
FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT
FOR THE OFFENSE"), AND § 3553 (a)(6) (" THE
NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES
AMONG DEFENDANTS WITH SIMILAR CONDUCT").

RAMSAY BELIEVES THE FACTS REFLECTED
IN THE COURT'S SENTENCE UNDER COUNT ONE
REFLECTS WHAT SOCIETY BELIEVES IS JUST PUNISHMENT
TODAY FOR HIS OFFENSE OF CONVICTION. INDEED,
THERE IS LITTLE DOUBT THAT THE TIME RAMSAY
HAS SPENT IN PRISON REFLECTS THE SERIOUSNESS
OF HIS OFFENSE WHICH, IN TURN, PROVIDES RESPECT
FOR THE LAW ESPECIALLY GIVEN THAT RAMSAY HAS
ALREADY SERVED MORE THAN 2 (TWO AND A HALF)
DECADES IN PRISON.

CONCLUSION:
RAMSAY RESPECTFULLY PRAYS THAT THIS
COURT WILL GRANT THIS MOTION FOR COMPASSIONATE
RELEASE AND REDUCE HIS TERM OF "MANDATORY LIFE"
TO A SENTENCE OUTSIDE OF A DEATH SENTENCE
AND APPOINT COUNSEL TO ASSIST RAMSAY TO BETTER
ARTICULATE HIS CIRCUMSTANCES.
RAMSAY HAS EXHIBITED EXTRAORDINARY
(14)

AND COMPELLING REASONS THAT WARRANT THE COURT TO GRANT HIM COMPASSIONATE RELEASE/ REDUCTION OF SENTENCE UNDER § 3582 AND CONGRESS' INTENT IN CREATING THE FIRST STEP ACT TO INCLUDE ALLOWING COURTS TO REVIEW REQUESTS FOR COMPASSIONATE RELEASE. RAMSAY ASSERTS THAT HIS SITUATION IS EXACTLY THE TYPE OF CASE THAT CONGRESS HAD IN MIND AT THE TIME IT DRAFTED THE FSA. THEREFORE RAMSAY HUMBLY ASKS THAT HE ALSO BE GIVEN A SECOND AND NEW CHANCE AT LIFE BASED ON THE FACTS HE HAS PRESENTED HERE TODAY.


DATED: JUNE, 1, 2020

RESPECTFULLY SUBMITTED

SIGNED: *Andrew Ramsay*

ANDREW RAMSAY - PRO SE

REG. NO. 43283-054

F.C.I. SCHUYLKILL

P.O. BOX 759

MINERSVILLE, PA. 17954-0759

## VERIFICATION

I, ANDREW RAMSAY, DO HEREBY
CERTIFY UNDER PENALTY OF PERJURY, (SEE:)
28 U.S.C. § 1746, THAT THE FOREGOING IS TRUE
AND CORRECT TO THE BEST OF MY KNOWLEDGE AND
RECOLLECTION.

DATED: JUNE, 1, 2020.

SIGNED: Andrew Ramsay

ANDREW RAMSAY

(16)

Sentence                                          3

1   there was no good cause, in the Court's view, shown for that

2   application.  To the contrary, the Court observed at trial

3   very substantial evidence of the zeal and professionalism

4   and competency with which defense counsel, in close

5   collaboration with his client, had defended this case.

6          Let's proceed, then, to the question of whether

7   defense counsel has any objections to any of the statements

8   in the pre-sentence report.

9          MR. DUNN:  No, your Honor.

10          THE COURT:  Does the government have any

11   objections?

12          MR. COHEN:  No, your Honor.

13          THE COURT:  I will note that I have

14   independently, and very carefully indeed, reviewed the

15   underlying facts and the conclusions drawn by the probation

16   officer, and I concur that the total offense level is 43 and

17   the criminal history category is Roman numeral I, calling

18   for a mandatory life imprisonment sentence.

19          Despite the very serious nature of the offense

20   here involved that resulted in the wanton murder of three

21   persons, and despite the obvious need in such circumstances

22   for a very severe sentence, both to punish the defendant for

23   this terrible deed and to deter others, the Court, like many

24   other courts, is not entirely comfortable with the fact that

25   the sentencing guidelines leave no meaningful discretion in

1   this situation.  But I have neither been furnished with any

2   requests for departure nor seen on my own any likely basis

3   on which a departure could be considered.  Therefore, I am

4   bound by the requirements of the guidelines in this respect.

5         Let me hear from defense counsel and then from

6   the defendant, if he wishes to be heard, and then from the

7   government, if it wishes to be heard, before I pronounce

8   final sentence.

9         MR. DUNN:  Your Honor, I attempted to look at

10  things that might get a departure, and I would have loved to

11  have presented something to the Court in that regard.  But

12  I, unfortunately, didn't find anything.

13        I would just note for the Court that I think this

14  was a difficult trial for all parties involved.  There was

15  some very tense testimony during the case.  The witness who

16  basically said Mr. Ramsey was the shooter, it really came

17  down to testimony that she gave in the grand jury, since in

18  subsequent proceedings it changed to it wasn't him, to

19  finally here where she didn't remember.  But the jury spoke

20  and they found Mr. Ramsey guilty.

21        It is just a very sad situation.  I wish there

22  were some way that you could sentence him to 30 years or

23  something like that.

24        THE COURT:  I think the question of what the jury

25  concluded I have long since made all my rulings on, and that

1   is not an issue for me here.   The egregiousness of the

2   offense is obvious.   The need for a very severe sentence is

3   obvious.   What is not so obvious is that a determination by

4   the Sentencing Commission that a 24-year-old person who, on

5   the record before the Court, is not without promise of

6   salvageability as a responsible person, is in effect

7   determined to be someone whom society will forever remove

8   from its everyday affairs.

9          I can't totally escape the notion that on all the

10   facts and circumstances of this case, extreme though they be

11   in terms of the awfulness of what Mr. Ramsey did, that

12   society as a whole is not entirely well served by adding, in

13   effect, a fourth removal from the everyday world to the

14   three who were so brutally taken away from this world.   But

15   it would be an absolute flat derogation of duty on my part

16   not to impose the law as the law is written.   So I make

17   these remarks only for whatever small benefit they might

18   have to the Sentencing Commission in future cases where the

19   sentence of human beings, whether good or not, so readily

20   defined, it seems to me, as to be excluded from the exercise

21   of the discretion of the court that has had more nuanced

22   inputs than any court has in any case before it.   But there

23   it is.

24          Is there anything further that defense counsel

25   wants to say?   Then I will hear from the defendant.

81nrrams

Sentence

1      MR. DUNN:  No, your Honor.

2      THE COURT:  Mr. Ramsey?

3      THE DEFENDANT:  Good evening, your Honor.

4   Basically, first and foremost, I would like to say that I

5   feel sympathy for the family for its loss.  Me as an

6   individual, I don't have no knowledge about law itself in

7   general.  I was charged for a crime that at least the

8   government said I committed.  I state my innocence to this

9   day.  I wasn't brought up as a lawyer.

10     Basically, your Honor, this is something new to

11  me, and I ask if you would just bear with me right now,

12  because I know that I am looking at a lot of time.  I will

13  be away from my family for a while.  All I ask God for right

14  now is to give me strength to go on with my life and to make

15  it wherever I go.  I'm a strong kid, and generally, you

16  know, whereas with my family and everything, I will try to

17  be there for them even while I'm incarcerated.  I would ask

18  your Honor to have leniency, if I'm saying the word

19  correctly, on me.

20     I had looked at something this morning, before I

21  came to court this morning, in the PSI report.  I think I

22  had told me lawyer before about it, about individuals who

23  they said I was racketeering with or who I was in a gang

24  with.  The government had asked a couple of people to come

25  in and testify against me who was in the so-called gang.

1   They didn't show up.  I don't know the reason why.  I had

2   specifically asked my lawyer if he could get those people to

3   be on my defense.  As I said before, I don't know about law,

4   how you go about that.  They wasn't here.

5           Basically, your Honor, I was in a situation, a

6   bad situation at a bad time.  As I say, people, places and

7   things, there are a lot of individuals in the street as a

8   black man, a young black man, who would be in a predicament

9   like me right now.  I guess I have to deal with the

10  consequences.

11          All I can ask your Honor for is the best leniency

12  you can do for me, your Honor, I appreciate it, and I ask

13  God to help me go on while I'm incarcerated.  That's

14  probably it, your Honor.

15          THE COURT:  I appreciate that statement.

16          Let me hear if there is anything the government

17  wants to say.

18          MR. COHEN:  Your Honor, if we could have just one

19  moment?

20          THE COURT:  Yes.

21          (Pause)

22          MR. COHEN:  Judge, we have nothing.

23          THE COURT:  Were there any discretion to impose

24  less than a life imprisonment term, I would have seriously

25  considered that, although I certainly would not have

Andrew Ramsay - 43283-054-2B.
F. C. I. Schuylkill
P. O. Box 759.
Minersville, Pa. 17954-0759

To: The Clerk of the
Thurgood Marshall
Courthouse, 40 Centre
New York, N. Y. 1000 7



FCI/FPC SCHUYLKILL
PO BOX 700
MINERSVILLE, PA 17954

THE ENCLOSED LETTER WAS PROCESSED THROUGH SPECIAL MAILING
PROCEDURES FOR FORWARDING TO YOU. THE LETTER HAS NEITHER
BEEN OPENED NOR INSPECTED. IF THE WRITER RAISES A QUESTION
OR PROBLEM OVER WHICH THIS FACILITY HAS JURISDICTION, YOU
MAY WISH TO RETURN THE MATERIAL FOR FURTHER INFORMATION OR
CLARIFICATION. IF THE WRITER ENCLOSES CORRESPONDENCE FOR
FORWARDING TO ANOTHER ADDRESSEE, PLEASE RETURN THE
ENCLOSURE TO THE ABOVE ADDRESS.

5/24/20



FOREVER / USA FOREVER / USA FOREVER / USA REVER / USA
PURPLE HEART
FOREVER USA

To: The Clerk of the
Thurgood Marshall
Courthouse, 40 Centre
New York, N.Y. 1007

Criminal
Docketing

Andrew Ramsay - 43283-054-23.
F. C. I. Schuylkill
P. O. Box 759
Minersville, Pa. 17954-0759

RECEIVE
2020 JUN 23  PM 3:08
CLERK'S OFFICE
S.D.N.Y.